UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENT JONES,

      Plaintiff,

CASE NO. 06-CV-11925

v.

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

BENCY MATHAI,

      Defendant.[1]

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Doc. 112)

### I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED** and the case be **DISMISSED** with prejudice.

### II.   REPORT

#### A.   Introduction

This *pro se* prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 was referred by United States District Judge David M. Lawson to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Doc. 3, 26.) Plaintiff was an inmate in the custody of the Michigan Department of Corrections ("MDOC") at the time of the events giving rise to this complaint. Defendant Mathai filed the instant motion for summary judgment on March

---

[1] Defendants Steve Hood, Travis Jones, George J. Pramstaller, and Patricia Caruso were terminated from the case on May 23, 2007, and Defendants Peggy Lee, Debbie Roth, Steve Dake, Harold White, Jan Epp, and Jim Armstrong were terminated from the case on June 24, 2008. (Doc. 27, 101.)

6, 2009. (Doc. 112.) Plaintiff responded on April 8, 2009 (Doc. 114) and Defendant Mathai replied on April 20, 2009. (Doc. 115.) After review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

### B. Procedural History

The initial Report and Recommendation ("R&R") filed in this case provides a complete summary of the underlying facts that are not repeated herein. (Doc. 7.) On July 13, 2006, Judge Lawson adopted the previously filed R&R and dismissed the case. (Doc. 10.) Plaintiff appealed the dismissal and, on April 27, 2007, because of intervening Supreme Court case law regarding exhaustion, the case was reopened and again referred to the undersigned Magistrate Judge for general case management. (Doc. 26.) The Sixth Circuit Court of Appeals affirmed the dismissal of the first and third claims identified in the previous Report and Order, but vacated the Order as to the second and fourth claims. (Doc. 25.) The first and third claims that were dismissed alleged that the discontinuance of a special accommodation for athletic shoes[2] constituted deliberate indifference to medical needs[3] and retaliatory transfer from MDOC's Parnall facility to the Deerfield facility. (Compl., Doc. 1 ¶¶ 15-57, 68-81). Plaintiff's remaining claims were: Count II, the denial of athletic shoes was in retaliation for exercising his First Amendment right to file non-frivolous grievances; and Count IV, deliberate indifference when Plaintiff was transferred to a facility that could not meet his serious medical need for a toilet in his room. (Report, Doc. 7;

---

[2] The documents filed in this case refer to these shoes alternatively as athletic shoes, gym shoes, and tennis shoes. For the sake of consistency, this R&R will use the term athletic shoes, which is the term used in the relevant MDOC guideline.

[3] The Sixth Circuit held that "Jones's need for special [athletic] shoes because of the ill-fitting nature of the state-provided shoes was not sufficiently serious. Therefore, prison officials did not act with deliberate indifference in denying him an accommodation." (Doc. 25 at 2.)

2

Orders, Doc. 25, 26; Compl. Doc. 1 ¶¶ 58-67, 82-88.)  A second R&R was adopted in part on June 24, 2008; that order dismissed all defendants except for Defendant Mathai and also dismissed Count IV of the complaint.  (Doc. 101.)

Thus, the remaining claim is Count II – the denial of athletic shoes was in retaliation for exercising his First Amendment right to file non-frivolous grievances.  In the Complaint, Plaintiff alleges that he "has previously filed grievances regarding health care staff's inactions toward him, and mainly against defendant Mathai."  (Compl., Doc. 1 ¶ 58.)  Plaintiff further explains that during his first seven years of incarceration, his athletic shoe accommodation was cancelled on two occasions.  (*Id*. ¶ 54.)  The cancellation at issue in this case occurred on April 21, 2003, when, as Plaintiff alleges, Defendant Mathai acted in retaliation and cancelled his special accommodation to wear athletic shoes "on orders from Defendant Hood."  (*Id*. ¶ 59.)  Despite a long history of being granted accommodations to wear athletic shoes due to the medical condition of his feet,[4] Plaintiff claims that when Sergeant Hood, who is not trained medically, decided to cancel his shoe accommodation, Defendant Mathai failed to provide medical evidence to override Hood so that Plaintiff would be allowed to keep his athletic shoes:

> ...medical staff defendant Mathai . . . exhibited retaliation against plaintiff because he had filed previous grievances against [her] department.
>
> And these facts are substantiated as medical staff failed [to] provide medical evidence that plaintiff should retain his [athletic] shoe notice.  Instead of allowing custody staff defendant Hood with no medical training, to be on the prowl seeking candidates to escort to medical staff to have their notice cancelled when Plaintiff had a permanent medical foot condition.

---

[4]Plaintiff states that he wore athletic shoes when "transferred to SMT [Parnall Correctional Facility] on June 31, 2002," and "on numerous visits to see doctors outside of his former facilities and on family visits as well on and off since 1999."  (*Id.* ¶ 60.)  Plaintiff avers that he "had numerous appointments to see medical staff[,] [i]ncluding defendant Mathai when these medical staff members continually allowed plaintiff to retain a notice to wear [athletic] shoes."  (*Id.* ¶ 61.)

3

> And based on these inactions, defendant Mathai . . . [is] liable for actions implored to retaliate against this plaintiff. While Michigan law prevent[s] plaintiff's medical records from being altered or having misleading facts placed in them or removing contents from a medical file etc.

(Compl., Doc. 1 ¶¶ 63-65.)[5]

### C.    Record Evidence Pertaining to the Remaining Claim

The relevant record evidence shows that on August 29, 2002, Plaintiff made a statement to a physician's assistant that he was going to hire a lawyer because he was unhappy with the medical treatment he was receiving. (Med. Progress Notes, Doc. 112, Ex. A at 7.) The physician's assistant referred Plaintiff to Defendant Dr. Mathai and Defendant Mathai first treated Plaintiff on November 6, 2002, for complaints regarding calluses on his feet. (Mathai Aff., Doc. 112, Ex. B ¶ 6.) Defendant noted that Plaintiff had strong pedal pulses, indicating that his circulation was not compromised, she noted that Plaintiff had calluses on his feet and she recommended that he soak his feet and rub the calluses with a pumice stone to remove them. (*Id.*) Plaintiff contends that although he requested a foot basin, one was not given to him. (Doc. 114 at 10.) Defendant Mathai saw Plaintiff only once more, in November 2002, when he came to her regarding cystic acne for which she prescribed an antibiotic. (Mathai Aff. ¶¶ 7-8.)

On April 21, 2003, approximately eight months after Plaintiff commented to the physician's assistant that he was going to hire a lawyer, Defendant Mathai performed a chart review of Plaintiff's medical records and noted that, under the MDOC Medical Advisory Guidelines, Plaintiff did not have a medical condition that supported an athletic shoe accommodation.[6] (*Id.*

---

[5] If the claim were viewed as a claim challenging Defendant Mathai's failure to provide unaltered or non-misleading medical evidence in retaliation for Plaintiff filing grievances, I suggest that Plaintiff's conclusory allegations of alteration that are unsupported by any specific factual foundation are insufficient to state a claim of retaliation. *See Harbin-Bey; Lanier, infra.*

[6] The MDOC Guidelines provide that athletic shoes are "provided by the quartermasters on recommendation of medical service providers for the following conditions only: 1) severe arterial insufficiency; 2) advanced diabetes

4

¶ 9.) Therefore, Defendant Mathai wrote an order discontinuing Plaintiff's special shoe accommodation. (*Id.* ¶ 9.) Defendant Mathai avers that when she discontinued the shoe accommodation, she was not aware of the statement Plaintiff had made to the physician's assistant eight months earlier that he intended to hire a lawyer. (*Id.* ¶ 13.)

Plaintiff filed a grievance the same day – April 21, 2003 – alleging that Sergeant Hood had "ordered Dr. Mathia [sic] to cancel his notice to wear [athletic] shoes," and that "Dr. Mathai's inactions are a violation of Policy," because a "notice cannot be cancelled without an examination of a Prisoner." (Grievance No. SMT-0304-2613-12z, Doc. 80, Ex. A at 1.) The grievance was denied at all three steps. (Doc. 80, Ex. A at 2-8.)

Plaintiff filed several more grievances in his efforts to get his shoe accommodation reinstated.[7] On July 2, 2003, the Step II response to Grievance No. SMT-03-04-02613-12f indicated that Plaintiff was then being treated by Dr. Pandya, who also found "no indication to allow you to wear [athletic] shoes, or wear [athletic] shoes at all times. Dr. Pandya has stated you are to get proper fitting state shoes." (Doc. 80, Ex. B at 17.) On July 3, 2003, the Step I response to Grievance No. SMT-03-05-2734-12d stated that "[d]ocumentation reflects that you have been told 10-19-00 as well as 8-29-01 that you do not meet the requirements for [athletic] shoes." (Doc.

---

mellitus; 3) peripheral neuropathies of lower extremities decreasing sensation; [or] 4) venous insufficiency with evidence of stasis ulcerations (new or old)." (MDOC Med. Service Advisory Comm. Guidelines, Doc. 112, Ex. B. at Attach. 1.)

[7]I note that, despite the fact that Plaintiff continued to allege that his special accommodation for athletic shoes was "permanent" under MDOC policy (Doc. 114 at 12), the MDOC informed him that it was not. (Doc. 80, Ex. B at 41.) I note that Plaintiff may have been under the misunderstanding that it was permanent because of language used when the MDOC granted a grievance in part in April 2002. The response stated that his shoe accommodation was being "temporarily renewed until evaluated," after which the "MSP will determine if the Special Accommodations should be renewed permanently." (Doc. 80, Ex. B at 29.) However, there is no evidence that this reference to "permanent" meant "forever," and since medical conditions change, it is unlikely and unreasonable that any accommodation would be incapable of changing to meet the medical needs or improvements of the prisoner. Instead, the evidence reveals that the MDOC stated that the accommodation was not permanent. (Doc. 80, Ex. B. at 41.)

5

80, Ex. B at 41.)  On August 4, 2003, in the Step I response to Grievance No. SMT-03-05-2762-12i, the grievance reviewer stated that the "[i]nvestigation reveals that there was no medical indication for you to possess an [athletic] shoe detail.  Therefore, it was removed from your Special Accommodation Notice."  (Doc. 80, Ex. B at 51.)

Plaintiff responds to Defendant's evidence by pointing out that he received "special ordered and special made shoes in 2005, demonstrating that Defendant Mathai retaliated against him [because] Plaintiff therefore met [the] requirement not only to wear [athletic] shoes, but also for orthopaedic shoes."  (Doc. 114 at 12.)

### D. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-

moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406. "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) (granting summary judgment where plaintiff supported each allegation of racial animus only with citation to his own testimony stating his opinion that he was the victim of racial harassment).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**E.    Analysis & Conclusion**

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in a constitutionally protected conduct; (2) the defendant's adverse action would deter

a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc). However, conclusory allegations of retaliatory motive unsupported by any specific factual foundation are insufficient to state a claim under § 1983. *See Pack v. Martin*, 174 Fed. App'x 256, 259 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *McMillan v. Fleming*, 136 Fed. App'x 818, 820-21 (6th Cir. 2005); *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003). Where the alleged retaliatory conduct began before the plaintiff engaged in protected conduct, no retaliatory claim can be established. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

With regard to the first element, a plaintiff's filing of a non-frivolous grievance is protected conduct under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). In addition, prisoners have a constitutional right to access to the courts and thus a threat to file a non-frivolous lawsuit is also protected conduct. *Thaddeus-X*, 175 F.3d at 391; *Wade-Bey v. Fluery,* No. 2:07-cv-117, 2008 WL 2714450 at *6 (W.D. Mich. July 8, 2008). Defendant Mathai argues that since Plaintiff did not file any grievances against her until after his shoe accommodation was canceled, Plaintiff cannot meet the protected conduct element. (Doc. 115 at 3.) However, since Plaintiff's vocalizing of his intent to hire an attorney implies his willingness to file a lawsuit, this action may be considered protected conduct so long as it is not frivolous. Therefore, I will assume that this element has been satisfied under the summary judgment standards.

As to the second element, although Defendant contends that the adverse action was *de minimis*, Judge Lawson has already determined that Plaintiff has "satisfied the second prong," having stated that "causing the plaintiff to wear shoes that cause him to develop painful sores may constitute adverse action that would deter a prisoner of ordinary firmness from exercising his right to speak out." (Order, Doc. 101 at 15.)

As to the third element, however, I suggest that evidence of retaliatory motive is wholly lacking. First, the timing of events dictates that Defendant Mathai was not motivated to retaliate by Plaintiff's filing of past grievances against her, as Plaintiff alleges, because the evidence shows that Plaintiff filed his first grievance against Defendant Mathai on April 21, 2003, immediately after she cancelled his shoe accommodation. (Doc. 80, Ex. A at 1.) Since Defendant Mathai's alleged retaliatory conduct took place *before* Plaintiff had engaged in the protected conduct of filing a grievance against her, no retaliatory claim can be established. *See Mt. Healthy, supra.*

The only other purported source for retaliatory animus lies in the August 2002 statement made by Plaintiff to the physician's assistant regarding Plaintiff's intention to hire a lawyer. This statement, however, was made *eight months* before Defendant Mathai cancelled Plaintiff's shoe accommodation. Further, Defendant Mathai states that she was not aware of the statement that Plaintiff intended to hire a lawyer and there is no evidence in this record to the contrary. But even assuming, *arguendo*, that Defendant Mathai was aware of the statement, I suggest that there is no evidence that the statement to another medical provider in any way motivated Defendant Mathai. *See Tate v. Campbell*, 85 Fed. App'x 413, 417-18 (6th Cir. 2003) (finding no evidence that removal of medical restriction was motivated, at least in part, by inmate's filing of grievance against another doctor who did not lift the restriction where there was no evidence that the restriction- removing physician was acting at the grieved physician's behest). To the contrary,

Plaintiff's own averment is that Defendant Mathai improperly cancelled his special accommodation to wear athletic shoes "on orders from Defendant Hood," not at the behest of or to rectify any retaliatory animus held by the physician's assistant. (Doc. 1 ¶ 59.)

I further suggest that the lack of temporal proximity defeats any reasonable inference of retaliatory motive since Plaintiff's statement to the physician's assistant was made eight months before Defendant Mathai's decision to cancel the shoe accommodation. *See Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) (finding no First Amendment retaliation where the employer terminated the employee eight months after her protected conduct); *Woodmansee v. Mascorro*, No. 99-1296, 2000 WL 145371, at *2 (6th Cir. Feb. 2, 2000) (dismissing retaliation claim where seven months passed between protected conduct and alleged retaliation); *Kelly v. Municipal Courts of Marion County, Indiana*, 97 F.3d 902, 912 (7th Cir. 1996) (finding four month delay between protected conduct and termination of employment seemed to undercut any inference of retaliation); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (finding five month period of time between the filing of the lawsuit and the alleged retaliatory conduct "greatly weakens any inference" of retaliation"); *Harris v. Hulkoff*, No. 2:05-cv-198, 2007 WL 2479467 at *5 (W.D. Mich. Aug. 28, 2007) ("no reasonable inference of retaliation can be drawn from the chronology of the alleged events" where seven months elapsed between the protected conduct and alleged retaliation).

Plaintiff also attempts to establish retaliatory animus through the fact that he received "special ordered and special made shoes in 2005, demonstrating [that] Defendant Mathai retaliated against him [because] Plaintiff therefore met requirement not only to wear [athletic] shoes, but also for orthopaedic shoes." (Doc. 114 at 12.) I suggest, however, that the evidence that Plaintiff was medically qualified for special shoes two years after the date at issue in this case does not prove

10

that the failure to grant an accommodation two years earlier was medically unsound, let alone that it was retaliatory, since medical conditions are subject to change.[8] I further note that since this lawsuit was filed in 2006, *after* Plaintiff received his orthopaedic shoes, this case does not present the scenario where a prisoner's request is granted soon after his civil rights lawsuit is filed, which could arguably be probative of an improper motive.

As a result, I suggest that the lack of evidence as to retaliatory motive is "so one-sided that one party must prevail as a matter of law," *Booker,* 879 F.2d at 1310, and that Defendant Mathai's motion for summary judgment should be granted and the case be dismissed in its entirety.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ 𝓒harles 𝓔 𝓑inder

---

[8] I note that Plaintiff's x-ray taken in 1999 revealed some early formation of bone spurs which may have reached a level requiring orthopedic shoes by 2005, although the record is unclear. (Doc. 80, Ex. B at 17.)

                                                                             CHARLES E. BINDER
Dated: April 30, 2009                          United States Magistrate Judge

## **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on counsel of record via the Court's ECF System and was mailed by the U.S. Postal Service to the following non-ECF participants: Kent Jones, 16847 Robson Street, Detroit, MI 48235-4048.

Date: April 30, 2009                   By    s/Patricia T. Morris
                                                Law Clerk to Magistrate Judge Binder